[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 15, 2008
THOMAS K. KAHN
CLERK

_____

No. 06-14192

_____

Agency No. A78-660-016

GERMAR SCHEERER,

Petitioner,

versus

U.S. ATTORNEY GENERAL,
MICHAEL CHERTOFF, Secretary of DHS,
in his official capacity,

Respondent.

_____

No. 06-15971

_____

Agency No. A78-660-016

GERMAR SCHEERER,
a.k.a. Germar Rudolf,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petitions for Review of Decisions of the
Board of Immigration Appeals
_____

**(January 15, 2008)**

Before TJOFLAT, HULL and WILSON, Circuit Judges.

WILSON, Circuit Judge:

In his second appearance before us in this matter, Germar Scheerer petitions

for review of the Board of Immigration Appeals' (BIA) decision denying his

motion to reopen removal proceedings and its decision denying his motion to

reconsider.  Scheerer, who has been removed from the United States, seeks

reopening of proceedings so that he may return to this country to apply for an

adjustment of status.  The BIA denied Scheerer's motions on the grounds that,

under an amendment to the governing regulation, Scheerer is prohibited from

pursuing adjustment of status in removal proceedings and may do so only by filing

an application with the United States Citizenship and Immigration Services

(USCIS).  Scheerer challenges the amended regulation, arguing that it, like the

regulation we declared invalid in our prior decision, bars virtually all paroled aliens

from applying for adjustment of status, and thus is contrary to the intent of §

245(a) of the Immigration and Nationality Act, 8 U.S.C. § 1255(a).  Scheerer and

the *amicus curiae* also challenge the application of the regulation to this case and

argue that the BIA abused its discretion in denying Scheerer's motions. For the reasons discussed below, we deny the petitions.

## I. BACKGROUND

A native and citizen of Germany, Scheerer fled that country in 1995 following his conviction for inciting racial hatred in violation of German law. *See Scheerer v. United States Att'y Gen.* (*Scheerer I*), 445 F.3d 1311, 1314 (11th Cir. 2006). He entered the United States as a conditional parolee on August 9, 2000,[1] and subsequently filed an application for asylum and withholding of removal. The Immigration Judge (IJ) denied Scheerer's claims and entered a finding that his application was frivolous. The BIA affirmed the IJ's decision without opinion, and Scheerer timely petitioned this Court for review.

While his petition was pending, Scheerer filed a motion with the BIA to reopen removal proceedings so that he could adjust his status to that of a lawful permanent resident based on his marriage to a United States citizen. The BIA denied his motion, finding that, as an arriving alien in removal proceedings,[2]

---

[1] *See* 8 U.S.C. § 1182(d)(5)(A) ("The Attorney General may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien . . . .").

[2] The definition of "arriving alien" is set forth at 8 C.F.R. § 1.1(q):

The term arriving alien means an applicant for admission coming or attempting to

(continued...)

Scheerer was ineligible under 8 C.F.R. § 1245.1(c)(8) to apply for an adjustment of status. Scheerer timely filed a petition for review, which we consolidated with his earlier petition. In November 2005, this Court and the Supreme Court denied Scheerer's emergency motions to stay removal pending appeal, and he was removed from the United States to Germany.

Upon our first review, we granted Scheerer's petitions in part and denied in part. We affirmed the denial of his claim for asylum and withholding of removal, but held that the IJ's findings were insufficient to support the conclusion that Scheerer's application was frivolous. *Scheerer I*, 445 F.3d at 1317, 1318. Additionally, we held that 8 C.F.R. § 1245.1(c)(8) was an invalid regulation. *Id.* at 1322. Noting that 8 U.S.C. § 1255(a) authorizes the Attorney General to adjust the status of any alien "who was inspected and admitted or paroled into the United States," we determined that Congress intended to allow most paroled aliens to apply for an adjustment of status. *Id.* We further concluded, based on related statutory provisions, that Congress intended for virtually all parolees to be placed in removal proceedings. *Id.* at 1321. The regulation, however, barred "[a]ny

[2](...continued)
come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked.

arriving alien . . . in removal proceedings" from seeking adjustment of status, 8 C.F.R. § 1245.1(c)(8) (2005), thereby rendering nearly all parolees ineligible. In light of this conflict, we held that the regulation was not based on a permissible construction of the statute. *Scheerer I*, 445 F.3d at 1322. We therefore reversed the denial of Scheerer's motion to reopen and remanded the case to the BIA. *Id.*

Following our decision, the Department of Homeland Security (DHS) agreed to seek the issuance of a transportation letter that would allow Scheerer to reenter the United States to pursue his adjustment application on remand. However, in response to our *Scheerer I* ruling and to similar decisions by other circuit courts,[3] the Attorney General promulgated an interim regulation repealing 8 C.F.R. § 1245.1(c)(8) and replacing it with an amended 8 C.F.R. § 1245.2(a)(1). *See* Eligibility of Arriving Aliens in Removal Proceedings to Apply for Adjustment of Status and Jurisdiction to Adjudicate Applications for Adjustment of Status, 71 Fed. Reg. 27,585, 27,591-92 (May 12, 2006). The amended regulation, unlike the former 8 C.F.R. § 1245.1(c)(8), permits arriving aliens in removal proceedings to apply for adjustment of status. In most circumstances, however, it deprives the IJ of jurisdiction to adjudicate such applications.[4] Instead,

---

[3] *See Bona v. Gonzales*, 425 F.3d 663 (9th Cir. 2005); *Zheng v. Gonzales*, 422 F.3d 98 (3d Cir. 2005); *Succar v. Ashcroft*, 394 F.3d 8 (1st Cir. 2005).

[4] The IJ retains jurisdiction when the following factors are present:

(continued...)

5

arriving aliens in removal proceedings must file adjustment applications with USCIS, a component of DHS. *See* 8 C.F.R. § 245.2(a)(1). The interim regulation provides that the amended 8 C.F.R. § 1245.2(a)(1) is applicable to all cases pending administrative or judicial review on or after May 12, 2006. 71 Fed. Reg. at 27,588.

On remand, the BIA relied on the interim regulation to deny Scheerer's motion to reopen. In a decision dated July 26, 2006, the BIA found that Scheerer does not fall within the narrow exception under which arriving aliens may apply for adjustment of status in removal proceedings before an IJ. Therefore, the BIA concluded, Scheerer must pursue any application for adjustment of status with USCIS. Scheerer filed a timely petition for review with this Court. Thereafter, he filed a motion to reconsider with the BIA, arguing, *inter alia*, that the BIA's decision frustrated the intent of our remand order because, as an alien previously

[4](...continued)

> (A) The alien properly filed the application for adjustment of status with USCIS while the arriving alien was in the United States;
>
> (B) The alien departed from and returned to the United States pursuant to the terms of a grant of advance parole to pursue the previously filed application for adjustment of status;
>
> (C) The application for adjustment of status was denied by USCIS; and
>
> (D) DHS placed the arriving alien in removal proceedings either upon the arriving alien's return to the United States pursuant to the grant of advance parole or after USCIS denied the application.

8 C.F.R. § 1245.2(a)(1)(ii). This exception is not applicable to Scheerer.

removed, he is barred from reentering the United States,[5] and therefore is unable to pursue an adjustment application with USCIS. *See* 8 U.S.C. § 1255(a) (providing that aliens "inspected and admitted or paroled into the United States" are eligible for adjustment of status); 8 C.F.R. § 245.1(a) (limiting eligibility to apply for adjustment of status to aliens "physically present in the United States"). The BIA denied Scheerer's motion on November 2, 2006, finding that the new interim regulation is applicable to Scheerer's case and is binding on the BIA, and that our decision involved another regulation (*see* 8 C.F.R. § 1245.1(c)(8) (2005)). The BIA also found that it has no authority to order DHS to allow Scheerer to reenter the United States for purposes of his seeking adjustment of status. Scheerer timely petitioned for review of the BIA's decision, and we consolidated his two petitions into the present appeal.

Scheerer raises three issues for our review. First, he argues that the amended 8 C.F.R. § 1245.2(a)(1) effects the same result as that produced by the former regulation, and thus is invalid for the reasons set forth in *Scheerer I*. Second, Scheerer argues that the BIA violated due process and our *Scheerer I* remand

---

[5] The parties disagree as to the length of the admission bar to which Scheerer is subject. The government asserts that Scheerer is inadmissable for five years, while Scheerer contends that the applicable period is ten years. *See* 8 U.S.C. § 1182(a)(9)(A). As this issue is immaterial to our disposition of the appeal, we need not resolve it.

instructions by applying the regulation to this case. Finally, Scheerer argues that the BIA's denial of his motions constitutes an abuse of discretion.

## II. DISCUSSION

### A. *Validity of Amended 8 C.F.R. § 1245.2(a)(1)*

The amended 8 C.F.R. § 1245.2(a)(1) provides that, in general, "[i]n the case of an arriving alien who is placed in removal proceedings, the immigration judge does not have jurisdiction to adjudicate any application for adjustment of status . . . ." Scheerer contends that this regulation is substantively identical to the former 8 C.F.R. § 1245.2(c)(8) in that it bars virtually all paroled aliens from pursuing adjustment applications. Accordingly, he argues, the amended regulation is invalid because, like its predecessor, it is contrary to the intent of 8 U.S.C. § 1255(a). *See Scheerer I*, 445 F.3d at 1322.

The validity of the amended 8 C.F.R. § 1245.2(a)(1) is an issue of first impression in the courts of appeals. In reviewing an agency regulation interpreting a statute the agency administers, we apply the two-step inquiry outlined by the Supreme Court in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842-44, 104 S. Ct. 2778, 2781-82, 81 L. Ed. 2d 694 (1984). *See Scheerer I*, 445 F.3d at 1318. First, we must consider "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842, 104 S. Ct. at 2781. "If the intent of Congress is clear, that is the end of the matter; for the

8

court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43, 104 S. Ct. at 2781. However, "if the statute is silent or ambiguous with respect to the specific issue," we turn to the second step, which requires us to decide whether the regulation is "based on a permissible construction of the statute." *Id.* at 843, 104 S. Ct. at 2782. To uphold the agency's interpretation under this inquiry, we "need not conclude that the agency construction was the only one it permissibly could have adopted . . . or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Id.* at 843 n.11, 104 S. Ct. at 2782 n.11. "[A]ll we must decide" is whether the agency "has filled the statutory gap 'in a way that is reasonable in light of the legislature's revealed design.'" *Lopez v. Davis*, 531 U.S. 230, 242, 121 S. Ct. 714, 722, 148 L. Ed. 2d 635 (2001) (quoting *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 257, 115 S. Ct. 810, 813-14, 130 L. Ed. 2d 740 (1995)).

If Congress "has not merely failed to address a precise question, but has given an 'express delegation of authority to the agency to elucidate a specific provision of the statute by regulation,' the agency's 'legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.'" *Scheerer I*, 445 F.3d at 1319 (quoting *Chevron*, 467 U.S. at 843-44, 104 S. Ct. at 2778). Deference to the agency "is especially appropriate

in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'" *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425, 119 S. Ct. 1439, 1445, 143 L. Ed. 2d 590 (1999) (quoting *INS v. Abudu*, 485 U.S. 94, 110, 108 S. Ct. 904, 915, 99 L. Ed. 2d 90 (1988)).

We begin with the governing statute, which provides in relevant part:

> The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence, if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissable to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a).

We previously found that § 1255(a) is at best ambiguous as to whether the Attorney General may regulate eligibility to apply for adjustment of status. *Scheerer I*, 445 F.3d at 1321. Here, however, the "precise question at issue" is different, as the challenged regulation does not alter the eligibility standards governing adjustment applications. Rather, it removes a category of applications from the jurisdiction of the immigration courts, leaving those applications to be adjudicated by USCIS pursuant to the companion regulation 8 C.F.R. § 245.2(a)(1). Arguably, § 1255(a) unambiguously permits this action through its delegation of authority to the Attorney General to adjust aliens' status "under such

10

regulations as he may prescribe." Nevertheless, we conclude that the validity of the regulation is more properly analyzed under the second *Chevron* step. Although Congress has allocated jurisdiction over adjustment applications to both DHS and the Department of Justice (DOJ),[6] it has not expressly stated which department has authority to adjudicate applications filed by arriving aliens in removal proceedings. Moreover, despite § 1255(a)'s broad delegation of authority, we cannot say that the statute unequivocally authorizes the Attorney General to place this class of applications outside the jurisdiction of DOJ. Given Congress's silence on these matters, we will apply *Chevron* step two and consider whether the regulation is based on a permissible construction of the statute.

In *Scheerer I,* we determined that § 1255 contemplates that "parolees—arriving aliens, virtually all of whom are placed in removal proceedings—should be eligible to apply for an adjustment of status." 445 F.3d at 1322. We invalidated 8 C.F.R. § 1245.2(c)(8) because it "exclude[d] the same class from eligibility." *Id.* We thus agreed with the Third Circuit's conclusion that, "'[w]hile the statute may be ambiguous enough to allow for some regulatory

---

[6] Section 1255(a) refers only to adjustment of status "by the Attorney General," but Congress has transferred the adjudication functions of the former Immigration and Naturalization Service (INS) to the Secretary of Homeland Security and his delegate in USCIS. 6 U.S.C. § 271(b)(5); *see also* 6 U.S.C. § 557 (providing that references in federal law to any officer whose functions have been transferred to DHS shall be deemed to refer to DHS Secretary or other official). Congress has retained in the Department of Justice the functions of the Executive Office for Immigration Review (EOIR), which includes the immigration courts. 8 U.S.C. § 1103(g)(1).

eligibility standards, it does not so totally abdicate authority to the Attorney General as to allow a regulation . . . that essentially reverses the eligibility structure set out by Congress.'" *Id.* (first alteration in original) (quoting *Zheng v. Gonzales*, 422 F.3d 98, 120 (3d Cir. 2005)).

Scheerer argues that the amended regulation implicates the same eligibility concern. We disagree. Unlike the former regulation, the amended 8 C.F.R. § 1245.2(a)(1) does not provide that arriving aliens in removal proceedings are ineligible for adjustment of status. Such aliens still may file adjustment applications, but generally must do so with USCIS rather than before an IJ. Thus, while the former regulation operated as an absolute bar to adjustment of status for these aliens, the amended regulation—together with the DHS regulation 8 C.F.R. § 245.2(a)(1)—merely delineates the forum in which their applications are to be adjudicated. Given this distinction, Scheerer's contention that the amended regulation is functionally equivalent to the regulation we invalidated in *Scheerer I* is without merit.[7]

---

[7] Scheerer offers no empirical support for his contention that the amended regulation bars "virtually all" paroled aliens from pursuing the merits of their adjustment applications. The absence of such evidence further distinguishes this case from *Scheerer I*, where it was apparent that the vast majority of parolees would be placed in removal proceedings and thus would be ineligible for adjustment of status under the former 8 C.F.R. § 1245.1(c)(8). *See Scheerer I*, 445 F.3d at 1322.

Moreover, the amended 8 C.F.R. § 1245.2(a)(1) reflects a reasonable construction of the statute's delegation of authority to the Attorney General. As noted, where Congress "has explicitly left a gap for the agency to fill," we are required to give controlling weight to the agency's interpretation unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 843-44, 104 S. Ct. at 2778. Nothing in § 1255(a) or in related statutory provisions convinces us that such a finding is warranted as to the amended regulation. Indeed, the regulation appears fully consistent with the broader statutory framework governing adjustment applications, in which Congress has divided adjudication functions between DOJ and DHS and has authorized those departments to fill the gap as to specific application procedures. Accordingly, we hold that the Attorney General did not exceed his authority in promulgating the amended 8 C.F.R. § 1245.2(a)(1), and we decline to declare the regulation invalid.[8]

B. *Application of Regulation to Scheerer*

---

[8] We also note that the current application framework is similar to that which existed before the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009. Prior to IIRIRA (which replaced the former deportation and exclusion proceedings with a single "removal" proceeding), INS generally had exclusive jurisdiction over adjustment applications filed by aliens in exclusion proceedings. *See In re Castro-Padron*, 21 I & N Dec. 379, 379-80 (BIA 1996); 71 Fed. Reg. at 27,586. As noted, *see supra* note 6, Congress has transferred INS's adjudication functions to USCIS. The similarity of these two regulatory schemes lends further support to our conclusion that the Attorney General's construction of § 1255(a) is reasonable.

Scheerer next argues that due process required the BIA to consider his motion to reopen under the law as it existed at the time of our remand, rather than under the amended regulation. Relying on cases in which courts have declined to apply new rules of law to prior conduct, Scheerer contends that the BIA's decisions involve an improper retroactive application of the amended regulation to his case. Relatedly, Scheerer and the *amicus* also contend that the BIA's application of the amended regulation violates our *Scheerer I* remand instructions.

We review the BIA's denial of a motion to reopen and its denial of a motion to reconsider for abuse of discretion. *Abdi v. U.S. Att'y Gen.*, 430 F.3d 1148, 1149 (11th Cir. 2005) (per curiam); *Assa'ad v. United States Att'y Gen.*, 332 F.3d 1321, 1341 (11th Cir. 2003). To the extent that the BIA's decisions were based on a legal determination, our review is *de novo*. *Li v. U.S. Att'y Gen.*, 488 F.3d 1371, 1374 (11th Cir. 2007) (per curiam). However, we defer to the BIA's interpretation of the regulations governing it "if the interpretation . . . is reasonable and does not contradict the clear intent of Congress." *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1243 (11th Cir. 2006).

Scheerer's due process argument fails for two reasons. First, the amended 8 C.F.R. § 1245.2(a)(1) does not have retroactive effect. "A statute or administrative regulation does not operate retroactively merely because it applies to prior conduct; rather a statute or regulation has retroactive effect if 'would impair rights a party

14

possessed when he acted, increase [his] liability for past conduct, or impose new duties with respect to transactions already completed.'" *Ga. Power Co. v. Teleport Commc'ns Atlanta, Inc.*, 346 F.3d 1033, 1043 (11th Cir. 2003) (alteration in original) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280, 114 S. Ct. 1483, 1505, 128 L. Ed. 2d 229 (1994)). Jurisdictional statutes and regulations "speak to the power of the court rather than to the rights or obligations of the parties," *Landgraf*, 511 U.S. at 274, 114 S. Ct. at 1502 (internal quotation marks omitted), and therefore are generally not considered impermissibly retroactive. *See Labojewski v. Gonzales*, 407 F.3d 814, 819 (7th Cir. 2005); *see also Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 951, 117 S. Ct. 1871, 1878, 138 L. Ed. 2d 135 (1997) ("Statutes merely addressing *which* court shall have jurisdiction to entertain a particular cause of action can fairly be said merely to regulate the secondary conduct of litigation and not the underlying primary conduct of the parties."). As discussed above, the amended 8 C.F.R. § 1245.2(a)(1) merely defines the jurisdiction of the immigration courts in relation to that of USCIS. Therefore, applying this regulation to Scheerer's motion "takes away no substantive right but simply changes the tribunal that is to hear the case." *Landgraf*, 511 U.S. at 274, 114 S. Ct. at 1502 (internal quotation marks omitted). While such application may "upset[] *expectations* based in prior law," *id.* at 269,

15

114 S. Ct. at 1499 (alteration and emphasis added), it does not impair any of

Scheerer's rights or otherwise operate retroactively.[9]

Second, Scheerer cannot prevail on his due process claim because he has no

constitutionally protected interest in purely discretionary forms of relief. "To

establish due process violations in removal proceedings, aliens must show that they

were deprived of liberty without due process of law, and that the asserted errors

caused them substantial prejudice." *Lonyem v. United States Att'y Gen.*, 352 F.3d

1338, 1341-42 (11th Cir. 2003) (per curiam). The decision to grant or deny a

motion to reopen or a motion to reconsider is within the discretion of the BIA, 8

C.F.R. § 1003.2(a), and we have recognized that this discretion is "very broad."

*Anin v. Reno*, 188 F.3d 1273, 1279 (11th Cir. 1999) (per curiam). Adjustment of

an alien's status likewise is a discretionary form of relief. 8 U.S.C. § 1255(a). We

have held that "the failure to receive relief that is purely discretionary in nature

does not amount to a deprivation of a liberty interest." *Garcia v. Att'y Gen.*, 329

_____

[9] Scheerer's argument that the amended regulation is a bill of attainder likewise is without merit. We have never held that the Constitution's Bill of Attainder Clause, U.S. Const. art. I, § 9, cl. 3, is applicable to Executive Branch regulations, and other courts have suggested to the contrary. *See, e.g.*, *Paradissiotis v. Rubin*, 171 F.3d 983, 988-89 (5th Cir. 1999); *Walmer v. U.S. Dept. of Defense*, 52 F.3d 851, 855 (10th Cir. 1995); *Korte v. Office of Pers. Mgmt.*, 797 F.2d 967, 972 (Fed. Cir. 1986). Even assuming the Clause applies, however, it is clear that the amended regulation is not invalid on these grounds. A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468, 97 S. Ct. 2777, 2803, 53 L. Ed. 2d 867 (1977). The amended 8 C.F.R. § 1245.2(a)(1) is a generally applicable jurisdictional rule. It does not single out any individual or group and does not impose punishment of any kind.

16

F.3d 1217, 1224 (11th Cir. 2003) (per curiam). Because Scheerer has no constitutionally protected interest either in the granting of his motions or in adjustment of status, he cannot establish a due process violation based on the BIA's decisions.

We likewise reject the argument that the BIA's application of the amended regulation to this case violates our remand instructions in *Scheerer I*. In those instructions, we did not order the BIA to reopen proceedings or to remand Scheerer's case to an IJ for adjudication of his adjustment application. We merely directed the BIA to conduct "further proceedings consistent with [our] opinion." *Scheerer I*, 445 F.3d at 1322. The BIA complied with this requirement, as neither of its orders relied on the invalidated 8 C.F.R. § 1245.2(c)(8) or otherwise conflicted with our decision. *Scheerer I* in no way precluded the BIA from relying on the amended regulation, which, as noted, was expressly made applicable to all cases pending administrative or judicial review on or after May 12, 2006. While our opinion established that Scheerer could not be declared ineligible for adjustment of status based on the "mere fact of removal proceedings," *id.*, it did not create any requirement that his adjustment application be adjudicated by an immigration court.

C. *Abuse of Discretion*

17

Finally, Scheerer and the *amicus* argue that the BIA abused its discretion in denying Scheerer's motions. They contend that, even if the BIA now lacks jurisdiction to adjudicate Scheerer's adjustment application, it has not been deprived of jurisdiction over his motion to reopen. Therefore, they suggest, the BIA should have granted the motion (thereby allowing Scheerer to return to the United States pursuant to his prior agreement with DHS) and continued his case until USCIS had an opportunity to pass on his adjustment application.

In support of this argument, Scheerer and the *amicus* cite several cases in which we found an abuse of discretion in the denial of a continuance during the pendency of a visa petition where the alien was seeking adjustment of status. *See Haswanee v. U.S. Att'y Gen.*, 471 F.3d 1212, 1218 (11th Cir. 2006) (per curiam); *Merchant v. U.S. Att'y Gen.*, 461 F.3d 1375, 1379 (11th Cir. 2006); *Bull v. INS*, 790 F.2d 869, 872 (11th Cir. 1986) (per curiam). Scheerer and the *amicus* also direct our attention to *In re Velarde-Pacheco*, 23 I. & N. Dec. 253, 256 (BIA 2002), in which the BIA held that, where certain five factors are met, a motion to reopen may be granted to provide an alien the opportunity to pursue an adjustment application based on a marriage entered into after the commencement of proceedings.

Scheerer's reliance on these decisions is misplaced, however, because the petitioners involved were not arriving aliens and thus were subject to a different

18

regulatory framework than that which governs here. Under the applicable regulations, the petitioners in the earlier decisions were entitled to initiate or renew adjustment applications with the immigration court during removal proceedings. *See* 8 C.F.R. § 1245.2(a)(1)(i), (a)(5)(ii). Thus, continuances were warranted in those cases because an IJ would have authority to adjudicate the petitioners' respective applications once the statutory prerequisites to adjustment of status were satisfied. By contrast, under 8 C.F.R. § 1245.2(a)(1)(ii), the immigration courts have no jurisdiction over adjustment applications filed by aliens in Scheerer's position. Therefore, his application would never return to the immigration courts even if denied by USCIS. Given these circumstances—in which there is no possibility that Scheerer's adjustment application would be adjudicated during removal proceedings—the BIA did not abuse its discretion in denying Scheerer's motions.

Scheerer and the *amicus* also contend that the BIA's decisions conflict with the intent of the amended regulation as reflected in DOJ's published implementation procedures. They note that the Federal Register notice setting forth the regulation states that "it will ordinarily be appropriate for an immigration judge to exercise his or her discretion favorably to grant a continuance or motion to reopen in the case of an alien who has submitted a prima facie approvable visa petition and adjustment application in the course of a deportation hearing." 71

19

Fed. Reg. at 27,589. This comment, however, merely reiterates the principles set forth in *Velarde-Pacheco* and similar cases. It cannot fairly be read to establish a policy requiring the reopening of proceedings even where, as here, there is no possibility that the alien's adjustment application would be adjudicated during those proceedings. We conclude that the BIA's reliance on the amended 8 C.F.R. § 1245.2(a)(1) as grounds for denying Scheerer's motions reflects a reasonable interpretation of that regulation, which was intended to clarify that applications such as Scheerer's "will be adjudicated *only* by U.S. Citizenship and Immigration Services (USCIS)." 71 Fed. Reg. at 27,587 (emphasis added). We therefore find no abuse of discretion in the BIA's decisions.[10]

### III. CONCLUSION

For the foregoing reasons, we deny the petitions for review.

**PETITIONS DENIED.**

---

[10] In view of the highly unusual circumstances of this case, we note that there may be avenues of relief still available to Scheerer. The government's brief emphasizes DHS's readiness to "take steps that would permit Scheerer to apply for adjustment of status within the applicable regulatory framework." According to the government, one such option would be for Scheerer to file an adjustment application with USCIS accompanied by a request that the applicable admission bar not be held against him for purposes of his seeking adjustment of status. Alternatively, the government suggests that Scheerer could request a grant of advance parole into the United States following his release from prison in Germany in order to pursue adjustment of status at that time. The government indicates that DHS is willing to entertain either of these proposals.