

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-11-2009

# Zheng v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4681

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Zheng v. Atty Gen USA" (2009). *2009 Decisions*. Paper 1885.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1885

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-4681

YAN ZHU ZHENG,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
(No. A77-648-925)

Submitted pursuant to Third Circuit LAR 34.1(a)
October 27, 2008

Before: McKEE,  NYGAARD and MICHEL,[*] *Circuit Judges.*

(Opinion filed: February 11, 2009)

OPINION

McKEE, *Circuit Judge*.

    Yan Zhu Yang has filed a petition for review of an order of the Board of

Immigration Appeals ("BIA") dismissing her motion to reconsider its determination that

---

[*]The Hon. Paul R. Michel, Chief Judge of the United States Court of Appeals for
the Federal Circuit, sitting by designation.

1

she was ineligible for adjustment of status as an arriving alien in removal proceedings.

For the reasons that follow, we will deny the petition for review.

**I.**

Because we write for the parties only, we will recite only the facts and procedural

history of this case that are necessary for our disposition of the petition. Yan Zhu Zheng

is a native and citizen of the People's Republic of China. She entered the United States

on or about January 6, 2000. On November 1, 2000, at a credible fear interview, Zheng

was given an I-94 entry document and paroled into the United States to pursue her

asylum claim. On that same date, the former INS issued a Notice to Appear ("NTA")

alleging that Zheng was ineligible for admission because she "willfully misrepresented

[her] identity when [she] applied for admission to the United States," in violation of INA

§ 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), and was an alien without a valid visa or

other entry document in violation of INA § 212(a)(7)(A)(i)(I), 8 U.S.C. §

1182(a)(7)(A)(i)(I).

On April 4, 2001, Zheng appeared before an Immigration Judge ("IJ"), admitted

the allegations in the NTA, and conceded both charges. Through counsel, Zheng stated

that she was seeking asylum, withholding of removal, protection under the Convention

Against Torture ("CAT"), and voluntary departure.[1] On October 22, 2003, Zheng filed a

---

[1]The government notes that Zheng's prior counsel moved to withdraw her original asylum application and permit substitution of an amended one. It further notes that the Joint Appendix does not contain a subsequent asylum application and that Zheng's

(continued...)

2

memorandum of law with the IJ outlining her purported eligibility for adjustment of

status, as a result of her marriage to Zhou Xian Ni, a potential beneficiary of an I-140

Immigration Petition for Alien Worker.  Zheng did not submit any proof of her marriage,

or any documents pertaining to her husband's petition and immigration status.  On

November 19, 2003, the IJ denied Zheng's request to apply for adjustment of status,

finding that she was ineligible for that relief as a matter of law, and ordered her removed

for the reasons stated in the NTA.

On appeal to the BIA, Zheng argued that she was eligible for relief.  On January

11, 2005, the BIA adopted and affirmed the IJ's decision.  It held that Zheng was

ineligible for adjustment of status as an arriving alien in removal proceedings, citing 8

C.F.R. § 1245.1(c)(8).  Zheng moved the BIA to reconsider its decision in light of *Succar*

*v. Ashcroft*, 394 F.3d 9 (1st Cir. 2005), which struck down 8 C.F.R. § 1245.1(c)(8).  On

March 31, 2005, the BIA denied Zheng's motion to reconsider, and declined to apply

*Succar,* as it was not controlling precedent within the judicial circuit that had jurisdiction

over Zheng's claim.  Zheng then filed a petition for review.

While her petition for review was pending, we decided *Zheng v. Gonzales*, 422

F.3d 98 (3d Cir. 2005).[2]  In *Zheng*, this court, after conducting the *Chevron* inquiry, held

_____

[1](...continued)
present counsel does not suggest that a subsequent application was submitted or that the
agency failed to adjudicate it.

[2]Not the same Zheng as here.

"that [8 C.F.R. § 1245.1(c)(8)] is invalid insofar as it renders parolees ineligible to apply for adjustment of status." 422 F.3d at 120. Therefore, we found that Zheng was eligible for apply for adjustment of status. *Id*. at 124. Accordingly, we remanded the case to the BIA, which was to determine whether the IJ or the district director of the United States Citizenship and Immigration Service ("USCIS") had jurisdiction to rule on the petition for adjustment of status.

Following the decision in *Zheng*, the government moved in this case to remand to the BIA to reconsider Petitioner's motion to reconsider consistent with the Court's published decision in *Zheng*. We granted the unopposed motion on March 21, 2006.

By the time this case had returned to the BIA for further proceedings concerning Zheng's motion to reconsider, the Attorney General had promulgated interim regulations allowing arriving aliens who would have fallen under 8 C.F.R. § 1245.1(c)(8), to file an application for adjustment of status with the USCIS, a component of the Department of Homeland Security ("DHS"), or, in one certain circumstance, directly with an IJ. *See* 8 C.F.R. § 1245.2.(a)(1).

On October 4, 2006, the BIA denied Zheng's motion to reconsider. The BIA noted the existence of the interim regulations and that Zheng's situation did not fall with the exception under which an alien could pursue adjustment of status before an IJ. Thus, the BIA determined that the interim regulations required aliens such as Zheng to file adjustment of status applications directly with the USCIS.

4

Zheng then filed this timely petition for review.[3]  She also filed a motion for stay

of removal.  The government filed a notice of non-opposition to the motion and this court

granted a stay of removal on November 17, 2007.

## II.

Zheng makes two arguments in support of her petition for review.  Each is

considered separately below.

### 1. As applied to Zheng, the amended regulation barring paroled aliens from applying for adjustment of status before an IJ is *ultra vires* and contrary to the intent of Congress.

In its first order denying Zheng's motion to reconsider, the BIA held that she was

ineligible for adjustment of status because of former 8 C.F.R. § 1245.1(c)(8), which made

ineligible for adjustment of status "[a]ny arriving alien[4] who is in removal proceedings

---

[3]Zheng says that on June 9, 2005, her husband appeared for an interview before USCIS in connection with his I-485 application for Adjustment of Status.  She claims his application was approved and his status adjusted to Lawful Permanent Resident.  She contends that, based on that approval, she is eligible for derivative lawful permanent resident status.

[4]It is not disputed that Zheng is an "arriving alien."  *See* 8 C.F.R. § 1.1(q) ("The term arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked. However, an arriving alien who was paroled into the United States before April 1, 1997, or who was paroled into the United States on or after April 1, 1997, pursuant to a grant of advance parole which the alien applied for and obtained in the United States prior to the alien's departure from and return to the United States, will not

(continued...)

5

pursuant to section 235(b)(1) [expedited removal] or section 240 [regular removal] of the Act." ).  However, as we held in *Zheng*, 422 F.3d at 111-121, this regulation in invalid because it is inconsistent with the text of INA § 245(a), which provides:

> *The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General*, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a) (emphasis added).   Other courts of appeals reached the same conclusion.  *See, e.g., Scheerer v. U.S. Attorney General ("Scheerer I")*, 445 F.3d 1311 (11th Cir. 2006); *Succar v. Ashcroft*, 394 F.3d 8 (1st Cir. 2005).

Responding to these decisions, the Attorney General eliminated 8 C.F.R. § 1245.1(c)(8) and promulgated a new, interim regulatory scheme that went into effect in May 2006.  Under the new regulatory scheme, the "USCIS has jurisdiction to adjudicate an application for adjustment of status filed by an alien, unless the immigration judge has jurisdiction to adjudicate the application under 8 C.F.R. § 1245.2(a)(1)."  8 C.F.R. § 245.2(a)(1).  Amended §  1245.2(a)(1) provides:

(a) General –

(1) Jurisdiction.

---

[4](...continued)
be treated, solely by reason of that grant of parole, as an arriving alien under section 235(b)(1)(A)(i) of the Act.")

(i) In General.  In the case of an alien who has been placed in deportation proceedings or in removal proceedings (other than as an arriving alien), the immigration judge hearing the proceeding has exclusive jurisdiction to adjudicate any application for adjustment of status the alien may file.

(ii) Arriving Aliens.  In the case of an arriving alien who is placed in removal proceedings, the immigration judge does not have jurisdiction to adjudicate any application for adjustment of status filed by the arriving alien unless:

(A) The alien properly filed the application for adjustment of status with the USCIS while the arriving alien was in the United States;

(B) The alien departed from and returned to the United States pursuant to the terms of a grant of advance parole to pursue the previously filed application for adjustment of status;

(C) The application for adjustment of status was denied by the USCIS; and

(D) DHS placed the arriving alien in removal proceedings upon the arriving alien's return to the United States pursuant to the grant of advance parole or after USCIS denied the application.

8 C.F.R. § 1245(a)(1).

As recited earlier, the BIA, in denying Zheng's motion to reconsider for a second time, noted the existence of the interim regulations and that Zheng did not fall within the exception under which an alien could pursue adjustment of status before an IJ.  Thus, the BIA determined that the interim regulations directed aliens such as Zheng to file adjustment of status applications directly with the USCIS.  In her petition for review, Zheng does not contest the BIA's holding that the exception contained in 8 C.F.R. § 1245.2(a)(1)(ii)(A)-(D) is not applicable to her.  Instead, she contends that, as applied to

7

her, the interim regulations barring paroled[5] aliens from applying for adjustment of status before an IJ is *ultra vires*[6] and contrary to the intent of Congress.

Zheng notes that because, as an arriving alien in a removal proceeding, the interim regulations preclude her from seeking adjustment of status before the IJ, *see* 8 C.F.R. § 1245.2(a)(1)(ii), and because she cannot qualify for the limited exception in 8 C.F.R. § 1245.2(a)(1)(ii)(A)-(D), she must file her application for adjustment of status with the USCIS. *See* 8 C.F.R. § 245.2(a)(1). However, she argues that, as applied to her, the interim regulations operate as a *de facto* bar to her eligibility for adjustment of status. Therefore, she submits that, as applied to her, the interim regulations are *ultra vires* and contrary to the language and intent of INA § 245(a), which provides: "The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General . . . .," and this court's decision in *Zheng v. Gonzales*, 422 F.3d 98 (3d Cir. 2005).[7]

---

[5]Zheng consistently refers to herself as a paroled alien. However, it is clear that a paroled alien is an arriving alien. *See* n.4, *supra.*

[6]"An *ultra vires* act is one which is impermissible as beyond the power or capacity of the entity in question." *Hollar v. Gov't of the Virgin Islands*, 857 F.2d 163, 169 (3d Cir. 1988).

[7]Zheng concedes, however, that the interim regulations are facially consistent with INA § 245(a) because they do provide an avenue for adjustment of status with the USCIS. Indeed, Zheng would have a hard time arguing that the interim regulations are not consistent with INA § 245(a). In *Scheerer v. Attorney General (Scheerer II)*, 513 F.3d 1244 (11th Cir. 2008), Scheerer fled Germany after being convicted of a crime. He entered the United States as a conditional parolee and filed a petition for asylum and

(continued...)

8

withholding of removal.  The IJ denied his claims and found that the alien's asylum application was frivolous.  The BIA affirmed.  Scheerer then filed a petition for review. While the petition was pending, Scheerer filed a motion to reopen with the BIA so that he could adjust his status to that of a lawful permanent resident based on his marriage to a United States citizen.  The BIA denied the motion, finding that, as a arriving alien in removal proceedings, Scheerer was ineligible under 8 C.F.R. § 1245.1(c)(8) to apply for adjustment of status.   He filed a petition for review and a motion to stay his removal. The motion to stay was denied and Scheerer was removed to Germany.

As to his petition for review, the court of appeals affirmed the denial of his claim for asylum and withholding of removal, but held that the IJ's findings were insufficient to support the conclusion that the application was frivolous.  However, the court of appeals held that 8 C.F.R. § 1245.1(c)(8) was invalid because it was inconsistent with INA § 245(a).  *Scheerer v. Attorney General* (*Scheerer I)*, 445 F.3d 1311 (11th Cir. 2006). According, the court of appeals reversed the denial of the motion to reopen and remanded to the BIA.

Following the court of appeal's decision, DHS agreed to seek the issuance of a transportation letter that would allow Scheerer to reenter the United States and pursue his adjustment status on remand.   In the meantime, however, the Attorney General promulgated the interim regulations at issue here.  On remand, the BIA relied on the interim regulations and denied Scheerer's motion to reopen, finding that Scheerer did not fall within the narrow exception for adjustment of status before an IJ, and concluding that Scheerer must pursue any application for adjustment of status with the USCIS.  Scheerer then filed a petition for review.

In that petition for review, Scheerer argued, *inter alia*, that interim regulation 8 C.F.R. § 1245.2(a)(1), which provides that, in general, "[i]n the case of an arriving alien who is placed in removal proceedings, the immigration judge does not have jurisdiction to adjudicate any application for adjustment of status . . . .," is substantively identical to former 8 C.F.R. § 1245.1(c)(8) in that it bars virtually all paroled aliens from pursuing adjustment of status applications.  Accordingly, Scheerer argued that the interim regulation was invalid because, like its predecessor, it is contrary to the intent of INA § 245(a), 8 U.S.C. § 1255(a).

The court of appeals, applying the *Chevron* inquiry, found that 8 C.F.R. § 1245.2(a)(1) was a reasonable construction of the statute, INA § 245, 8 U.S.C. § 1255(a),

Zheng's argument that the interim regulations act as a *de facto* bar to her eligibility for adjustment of status is based on her claim that it takes the USCIS in excess of one year to process applications to adjust status. However, she contends that because INA § 241(a)(1)(A) specifies that an alien under a removal order shall be removed within 90 days of such an order becoming final, she will be taken into custody and removed before her application of adjustment of status is adjudicated, thereby rendering her application abandoned.

However, her argument is without merit. Indeed, as Zheng concedes, there are administrative methods available to her to prevent the execution of her removal order.

---

[7](...continued)
and declined to declare the interim regulation invalid. *Scheerer II*, 513 F.3d at 1252. It wrote:

> Unlike the former regulation, the amended 8 C.F.R. § 1245.2(a)(1) does not provide that arriving aliens in removal proceedings are ineligible for adjustment of status. Such aliens still may file adjustment applications, but generally must do so with the USCIS rather than before and IJ. Thus, while the former regulation operated as an absolute bar to adjustment of status for these aliens, the amended regulation – together with the DHS regulation 8 C.F.R. § 245.2(a)(1) – merely delineates the forum in which their applications are to be adjudicated. Given this distinction, Scheerer's contention that the amended regulation is functionally equivalent to the regulation we invalidated in *Scheerer I* is without merit.

*Scheerer II*, 513 F.3d at 1251.

*Scheerer II* was decided after Zheng filed her brief. Inexplicably, however, Zheng has not filed a reply brief to address the effect of *Scheerer II* on her petition for review.

She can file an request for an administrative stay of removal with the agency while her application for adjustment of status is pending. 8 C.F.R. § 241.6. She can also file a motion to reopen the removal proceedings. INA § 240(c)(6). She can seek the consent of Immigration and Customs Enforcement's ("ICE") Chief Counsel to join in a consent motion to reopen proceedings. 8 C.F.R. §§ 1003.2(c)(3)(iii), 1003.23(b)(4)(iv). However, Zheng summarily claims that they are inadequate because they take years to obtain. Nonetheless, administrative methods to prevent her removal do exist, and she has not attempted to use any of them.

In addition, the situation in which Zheng finds herself, while unfortunate, is entirely of her own making. The interim regulations and the new procedures for filing an application for adjustment of status while in removal proceedings were implemented on May 11, 2006. Moreover, the BIA's October 4, 2006 decision told Zheng of the proper procedure for relief. However, Zheng has never applied to the USCIS for an adjustment of status. In addition, as noted, a formal stay of removal by this court has been in effect since November 2007. Thus, it would seem that there has been sufficient time for Zheng to properly file an application with USCIS and obtain an adjudication of that application for adjustment of status. However, for some inexplicable reason, she has chosen to pursue relief outside the existing regulatory scheme and instead seek a declaration that the regulatory scheme is *ultra vires* as applied to her.

**2. The BIA erred by denying the application for adjustment of status rather than remanding it to the IJ or the USCIS.**

11

In its October 4, 2006 decision denying Zheng's second motion to reconsider, the BIA wrote:

> [Zheng] . . . is an arriving alien who does not come with the narrow exception  [contained in 8 C.F.R. § 1245.2(a)(1)(ii)(A)-(D)].  As we are bound by the new Attorney General regulations, which were promulgated after [the Third Circuit's] order in this case, we will not remand this case to the Immigration Judge. [Zheng] must pursue any application for adjustment of status with the  [USCIS], independent of these removal proceedings.

JA 3.  Therefore, the BIA denied Zheng's motion to reconsider.  *Id*.

In this portion of her petition for review, Zheng contends that the BIA erred by not considering the possibility of remanding the case to the USCIS, and/or by not considering the possibility of remanding the case to an IJ so that she could seek adjournment or termination of her proceedings in order to apply to the USCIS for adjustment of status, consistent with the new, interim regulations.  However, she offers no authority for her contention that the BIA could have remanded to the USCIS or to an IJ.  She does contend that in *Zheng* we strongly suggested that a remand to the USCIS was within the power of the BIA.  In support thereof, she points to the following statement in *Zheng*:

> Because the plain text of § 1245.2(a)(1) appears to grant the district director the jurisdiction to hear adjustment of status applications from arriving aliens in removal proceedings, and because neither party has provided any convincing argument for granting jurisdiction to any other official, we tentatively conclude that the USCIS district director for Philadelphia should have jurisdiction over Zheng's adjustment application.  Nonetheless, we will remand to the BIA for further consideration; if the parties agree, or if the BIA is convinced, that the IJ has jurisdiction to hear Zheng's application, then the Board may remand it to the IJ rather than to the district director.

12

422 F.3d at 124. However, in *Zheng*, the regulation about which we were talking – § 1245.2(a)(1) – was the old regulation, not the amended § 1245.2(a)(1), or the new regulatory scheme, at issue here. Admittedly, the new regulatory scheme arguably cleared-up the uncertainty identified in *Zheng* as to which entity has jurisdiction to adjudicate adjustment applications for arriving aliens. However, we do not believe that this statement from *Zheng* can be taken as definitive authority to support Zheng's argument that the BIA can remand to either the USCIS or an IJ.

Indeed, we believe that the amended, interim regulations do not contemplate a remand of proceedings before the BIA to the Immigration Courts or to USCIS for purposes of filing applications for adjustment of status. There can be no dispute that amended 8 C.F.R. § 1245.2(a)(1) delineates the jurisdiction of the immigration courts to consider applications for adjustment of status. We further note that arriving aliens such as Zheng do not fall within the narrow exception permitting immigration court jurisdiction for adjustment applications. 8 C.F.R. § 1245.2(a)(1)(ii)(A)-(D). Accordingly, applications for adjustment of status from arriving aliens such as Zheng must be presented to the USCIS. *See* 8 C.F.R. § 245.2(a)(1). Moreover, the jurisdictional regulation applicable to Zheng, 8 C.F.R. § 1245.2(a)(1), prevents the immigration courts from ever having jurisdiction over Zheng's adjustment application. Therefore, the BIA could not have remanded to the IJ so that Zheng could seek adjournment or termination of her proceedings in order to apply to the USCIS for

13

adjustment of status. The BIA also could not have sent the case to the USCIS becannot it

cannot remand proceedings to the USCIS when an appeal is taken from an IJ's decision.

In addition, the BIA could not have remanded the case to the USCIS because a denial by

the USCIS woul never fall within the BIA's jurisdiction. *See Scheerer v. Attorney*

*General* ("*Scheerer II*"), 513 F.3d 1244, 1254 (11th Cir. 2008) (holding the BIA did not

abuse its discretion in denying alien's attempt to have proceedings before the Board

continued until USCIS had an opportunity to adjudicate his adjustment application

because a decision by the USCIS would never return to the immigration courts and would

never be reviewed by the BIA). Accordingly, if the BIA remanded to the USCIS or an IJ,

it would ignore the limits placed on its own jurisdiction. But, that is something it cannot

do. *See Matter of Sano*, 19 I. & N. Dec. 299, 300-01 (BIA 1995) ("[u]nless the

regulations affirmatively grant us power to act in a particular matter, we have no . . .

jurisdiction over it").

We do note that two recent court of appeals decisions appear contrary to *Scheerer*

*II.* In *Kalilu v. Mukasey*, 516 F.3d 777 (9th Cir. 2008), an arriving alien under a removal

order petitioned for review of an BIA order which, *inter alia*, denied his motion to reopen

so that he could file an application to adjust his status on the basis of his marriage to a

U.S. citizen. The BIA held that the arriving alien's motion to reopen must be denied

because, under the interim regulations, the arriving alien must pursue his adjustment

application with the USCIS independent of removal proceedings. The court of appeals

14

held that the "BIA's denial of Petitioner's motion to reopen solely on jurisdictional grounds constitutes an abuse of discretion." 516 F.3d at 779. It wrote:

> The opportunity that the Interim [Regulations] afford[] for an arriving alien in removal proceedings to establish his eligibility for adjustment based on a *bona fide* marriage is rendered worthless where the BIA, as it purports to do in the present case, denies a motion to reopen (or continue) that is sought in order to provide time for USCIS to adjudicate a pending application. Without a reopening or a continuance, an alien is subject to a final order of removal, despite the fact that he may have a *prima facie* valid I-130 and adjustment application pending before USCIS. If an alien is removed, he is no longer eligible for adjustment of status.
>
> The BIA's denial of Petitioner's motion to reopen on jurisdictional grounds is also contrary to the Board's general policy of favorably exercising its discretion to grant motions to reopen on the basis of a unadjudicated I-130 petition.

*Id*. at 780 (citations omitted). Therefore, the court of appeals remanded to the BIA for the Board to exercise its discretion. *Id*.

In *Ni v. BIA*, 520 F.3d 125 (2d Cir. 2008), the court of appeals had three consolidated petitions for review before it, filed by arriving aliens under removal orders. The common question for its review was:

> [W]hether the Board of Immigration Appeals . . . errs or abuses its discretion when it denies a motion to reopen removal proceedings, filed by an asylum application seeking adjustment of status before the U.S. Citizenship and Immigration Services . . ., on the ground that the BIA lacks jurisdiction over the adjustment application.

*Id*. at 127. The court of appeals concluded that "[b]ecause the BIA did not set forth a rational explanation for it decision to deny petitioners' motions, we hold that their denial constitutes an error of law and remand these cases to the BIA for reconsideration of the

15

motions to reopen." *Id.* It explained:

> The BIA denied each of the motions to reopen based on jurisdictional grounds, relying on a regulation, then recently adopted by the Attorney General, that barred the adjudication in removal proceedings of most applications for adjustment of status. Pursuant to this regulation, arriving aliens in removal proceedings, such as the petitioners in this case, must press their adjustment applications before the USCIS. Inasmuch as the BIA accurately relayed the substance of this regulation to petitioners, it cannot be said that the BIA misconstrued the regulation's effect on its jurisdiction over adjustment applications filed by aliens in removal proceedings.

> The BIA erred, nevertheless, because a rote recital of a jurisdictional statement – even if technically accurate – does not adequately discharge the BIA's duty to consider the facts or record relevant to the motion and provide a rational explanation for its ruling. From our review of the record, we have no doubt that the petitioners sought to reopen and continue their removal proceedings and, at the same time, obtain an adjustment of status pursuant to the new regulations. We find no reason for the BIA to have assumed, however, that the petitioners intended to press their applications in removal proceedings, rather than before the USCIS, for forum so designated by the regulation. Indeed, two of the petitioners . . . clearly set forth that they intended to pursue their adjustment applications before the USCIS. A more likely purpose of the motions to reopen, then, was to permit petitioners to press their adjustment applications before the USCIS without remaining subject to final orders of removal. The BIA did not consider, however, whether petitioners' newfound ability to file adjustment applications with the USCIS warranted a favorable exercise of discretion to reopen and continue the proceedings and thereby lift the removal orders. Accordingly, the reason set forth by the BIA for its denial of the motions – a lack of jurisdiction – was unresponsive to the relief petitioners sought and therefore did not provide a rational explanation for the denial.

*Id.* at 129-30 (citations and internal quotations omitted).

However, Zheng is not in the same position as the petitioners in *Kalilu* and *Ni*. Those petitioners sought to reopen (or continue) removal proceedings in order to proceed with adjustment applications with the USCIS. However, Zheng has not filed a motion to

16

reopen or continue her removal proceedings in order to proceed with an adjustment application with the USCIS. Moreover, Zheng has not filed an adjustment application with the USCIS even after the BIA, in its October 4, 2006 decision, told Zheng that a filing with the USCIS was the proper way to obtain the relief she wants. Indeed, her argument throughout this entire proceeding is that the interim regulations are invalid as applied to her. Thus, she is contending that the proper forum for her to seek adjustment of status is in removal proceedings before an IJ. However, as discussed in the earlier portion of this memo, that contention has no merit. The controlling interim regulation, 8 C.F.R. § 1245.2.(a)(1), clearly precludes her from seeking adjustment of status before an IJ. And, based on that regulation, the BIA here denied her motion to reconsider on jurisdictional grounds. The BIA here was not faced with a motion to reopen or a motion for a continuance so that Zheng could seek adjustment of status with the USCIS. Thus, the BIA was not asked to "consider . . . whether  [Zheng's] . . . ability to file [an] adjustment application[] with the USCIS warranted a favorable exercise to reopen and continue the proceedings and thereby lift the removal order[]." *Ni*, 520 F.3d at 130. Consequently, it cannot be fairly said that the BIA abused its discretion in denying Zheng's motion to reconsider on jurisdictional grounds.

17

In fact, the BIA's decision, given the question before it, was absolutely correct. For that reason, *Kalilu* and *Ni* provide no help to Zheng at all.

**III.**