[PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 20-13129

_____

RAINEY MUOKA MUTUA,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A214-236-103

_____

Before WILSON, LAGOA, Circuit Judges, and MARTINEZ,* District Judge.

MARTINEZ, District Judge:

Petitioner Rainey Muoka Mutua, a native and citizen of Kenya, seeks review of the final order issued by the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") discretionary denial of Mutua's application for adjustment of status. In his petition, Mutua argues that the IJ erred by holding him to an improperly high burden of proof when considering whether he was entitled to a favorable exercise of discretion. Mutua also argues that the BIA erred by applying the wrong standard of review to the IJ's determination, and that it misinterpreted its own regulations on administrative notice. Lastly, he argues that the BIA erred by not referring his appeal to a three-member panel because his case involved complex, novel, or unusual issues of law.

The government, in turn, contends that we lack jurisdiction over Mutua's issues challenging the burden of proof applied by the IJ and standard of review applied by the BIA, and we should dismiss his petition in that respect. As to the other issues regarding administrative notice and referral to a three-member panel, the government asserts that the BIA did not abuse its discretion and urges us to deny Mutua's petition. After reviewing the record and reading

---

* Honorable Jose E. Martinez, United States District Judge for the Southern District of Florida, sitting by designation.

the parties' briefs, we agree with the government and dismiss in part and deny in part Mutua's petition for review.

## I.    Background

Mutua, a native and citizen of Kenya, was admitted into the United States as a non-immigrant temporary visitor for business. He was authorized to remain in the country for about three months but did not depart in January 2006 as his visa required. In 2008, Mutua married a United States citizen. About eight years later, Mutua applied for an adjustment status. Nearly one year later, the Department of Homeland Security ("DHS") denied Mutua's application because he had criminal charges pending against him. In January 2018, Mutua re-submitted his adjustment application, but DHS denied it again for the same reasons.

The pending criminal charges arise from an alleged sexual assault that occurred in August 2013, while Mutua and several family members vacationed in South Carolina. After the vacation, Mutua's sister-in-law filed a report with the police stating that Mutua had sexually assaulted her eleven-year-old daughter. In response to the report, the police opened an investigation and arrested Mutua in September 2015, charging him with engaging in criminal sexual conduct with a child in the second degree. *See* S.C. Code Ann. § 16-2-655(B)(1). The case proceeded to trial and resulted in a hung jury. The state dismissed the charge against Mutua because the victim and her family did not want to endure another trial. When the jury trial concluded in October 2019, the state transferred custody of Mutua to DHS. DHS issued Mutua a notice to appear,

20-13129                Opinion of the Court                4

charging him as removable under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B).  Through counsel, Mutua conceded removability as charged and stated that he would apply for adjustment of status based on his marriage to a U.S. citizen.

At the merits hearing on Mutua's entitlement to adjustment of status, Mutua testified that he entered the United States with a business visa in 2005 but never left; married a U.S. citizen; fabricated trailers for a living; lived with his mother, wife, mother-in-law, and grandmother-in-law; and helped care for his in-laws.  He testified that he had never been convicted of a crime, but that he had been arrested once for allegedly sexually abusing his niece.  He testified to the facts and circumstances surrounding the crime he was accused of committing and denied any wrongdoing.  Mutua's wife testified, stating that Mutua was a good and caring husband, and she did not believe he committed the alleged crime.  His mother-in-law also testified, agreeing with her daughter about Mutua's character.

The IJ issued a decision recognizing that Mutua was statutorily eligible for adjustment of status but denying his application because Mutua did not merit a favorable exercise of the IJ's discretion.  Without the benefit of a trial transcript, the IJ detailed the alleged assault based on the information provided by DHS.  The IJ concluded that, based on the evidence, there was reason to believe that Mutua committed the offense.  In addition, the IJ determined that Mutua had abused this country's hospitality by remaining longer than his non-immigrant visa authorized, and there was no evidence

that he would be unable to work and provide for his family if removed to Kenya. Thus, while Mutua was statutorily eligible for adjustment of status, the IJ exercised its discretion and denied his application.

Mutua administratively appealed to the BIA. A single-member panel of the BIA dismissed Mutua's appeal and denied his motion to remand. The BIA stated that it reviewed *de novo* questions of law and the IJ's discretion and judgment. It then determined that, even if the government had implicitly conceded that Mutua did not engage in criminal conduct by accepting Mutua's statutory eligibility for adjustment of status, the IJ still had the independent obligation to inquire into Mutua's conduct to assess whether he merited a discretionary adjustment of status, and in doing so, the IJ was not bound by the government's concessions.

The BIA was not persuaded by Mutua's argument that the IJ improperly held him to a "clear and convincing" burden of proof, rather than to a "preponderance of the evidence" burden. The BIA also did not agree with Mutua that the IJ denied his application because there was probable cause to believe that he committed the assault—a lower standard of proof than "preponderance of the evidence." The BIA concluded that the IJ's use of the word "convincingly" did not impose a requirement on Mutua to prove his lack of criminal activity by a "clear and convincing" standard. Rather, the term "convincingly," as interpreted by the BIA in the context of the IJ's decision, simply noted Mutua's burden to prove with credible and persuasive evidence that he merited relief.

The BIA then balanced the factors relevant to Mutua's application and determined that the adverse factors outweighed the favorable ones. After noting the positive factors, it determined that Mutua's violation of his immigration status by overstaying his visa and arrest for the sexual assault charge were adverse factors. The BIA recognized that the IJ found the police and medical reports reliable and persuasive as to the key facts forming the basis for Mutua's actual conduct in connection with the child sexual abuse complaint. Those records all either supported or could not rule out the conclusion that Mutua sexually abused his niece. The BIA specifically noted that there was sufficient evidence in the police reports to show probable cause that the child molestation occurred, and because there was conflicting evidence on whether Mutua engaged in the criminal misconduct, the IJ's findings as to Mutua's actual conduct were a permissible view of the evidence.

In sum, the BIA acknowledged that there was no conclusive evidence that Mutua committed a sexual assault on a minor, but the existing evidence coupled with the severity of the crime alleged was sufficient to conclude that Mutua did not merit adjustment of status as a matter of discretion. Upon this conclusion, the BIA stated that given the conflicting evidence over whether Mutua committed the crime, the IJ did not commit "clear error" with regard to Mutua's actual conduct.

The BIA also declined to take administrative notice of Mutua's criminal trial transcript. The BIA reasoned that while the transcript appeared to be an official document, because the BIA

20-13129                Opinion of the Court                    7

was prohibited from reviewing it to weigh evidence and make a factual finding that Mutua did not commit the crime, administrative notice was not appropriate.

## II.    Standard of Review

We review only the BIA's decision, unless it expressly adopted the IJ's opinion or agreed with the IJ's reasoning. *Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1306 (11th Cir. 2019). To the extent the BIA adopts the IJ's decision, we review the IJ's decision as if it were the BIA's decision. *Id.* We review our own subject-matter jurisdiction *de novo*. *Juene v. U.S. Att'y Gen.*, 810 F.3d 792, 799 (11th Cir. 2016).

## III.    Discussion

### A.  The Court Lacks Jurisdiction Over the BIA's Discretionary Judgment

Generally, the Immigration and Nationality Act ("INA") § 242, contained in 8 U.S.C. § 1252, prevents us from exercising jurisdiction over a BIA's discretionary judgment regarding adjustment of status.  INA § 242(a)(2)(B), 8 U.S.C. § 1252(a)(2)(B).  Although we may review *de novo* constitutional questions and questions of law, the INA's jurisdictional bar prohibits our review of an exclusively "discretionary decision" and of "any judgment relating to [the alien's] request for relief, except to the extent that he raises a constitutional claim or a question of law."  INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D); *Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1272 (11th Cir. 2020) (en banc), *cert. granted*, 141 S. Ct. 2850 (June 28,

2021) (No. 20-979); *Juene*, 810 F.3d at 799.  A question of law includes whether the BIA applied the wrong legal standard.  *See Jeune*, 810 F.3d at 799.

We have jurisdiction over genuine, colorable constitutional or legal claims, but a "party may not dress up a claim with legal or constitutional clothing to invoke our jurisdiction."  *Patel*, 971 F.3d at 1272.  "A colorable claim need not involve a substantial violation, but the claim must have some possibility validity."  *Id.* at 1275 (internal quotation marks omitted).  An argument couched as a legal question that essentially challenges the agency's weighing of evidence is a "garden-variety abuse of discretion argument" that does not state a legal or constitutional claim.  *Fynn v. U.S. Att'y Gen.*, 752 F.3d 1250, 1252–53 (per curiam) (11th Cir. 2014) (internal quotation marks omitted); *see also Patel*, 971 F.3d at 1280 ("[T]he BIA's factfinding, factor-balancing, and exercise of discretion normally do not involve legal or constitutional questions, so we lack jurisdiction to review them." (internal quotation marks omitted)).

The Attorney General has discretion to grant an adjustment of status to an alien who was "inspected and admitted or paroled into the United States . . . if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed."  INA § 245(a), 8 U.S.C. § 1255(a).  The burden is on the alien to establish that he warrants relief as a matter of discretion.  INA § 240(c)(4)(A)(ii), 8 U.S.C. § 1229a(c)(4)(A)(ii).

Even when an alien is statutorily eligible for an adjustment of status, the IJ "can still decide—for any number of reasons—that a favorable exercise of discretion is not warranted." *Patel*, 971 F.3d at 1267. The BIA reviews an IJ's discretionary decision *de novo*. *Id.* at 1269. To make a discretionary determination, the IJ should balance the alien's positive and negative factors and it can accord more weight to certain factors over others. *See Matter of C-V-T-* 22 I. & N. Dec. 7, 11 (BIA 1998). When evaluating the existence of adverse factors, it is "appropriate to consider evidence of unfavorable conduct, including criminal conduct which has not culminated in a final conviction." *Matter of Thomas*, 21 I. & N. Dec. 20, 23 (BIA 1995).

Mutua argues on appeal that the IJ improperly applied a "clear and convincing evidence," instead of "preponderance of the evidence," burden of proof. He also contends that the BIA improperly reviewed the IJ decision for "clear error," instead of *de novo*. We lack jurisdiction to consider these issues. Although Mutua couches his challenges as legal questions, he is, essentially, attacking the weight the IJ and BIA accorded to his criminal charge and the allegations surrounding it.

Mutua's argument that the IJ held him to an improperly high burden of proof does not constitute a colorable claim because the IJ required him to establish that he merited an exercise of discretion, not that he had to prove there was no probable cause to support the criminal charge. Moreover, the IJ was not precluded from considering Mutua's criminal conduct in its analysis even though

Mutua was not convicted of the crime charged. *See Matter of Thomas*, 21 I. & N. Dec. at 23. With respect to Mutua's argument that the IJ failed to apply a "preponderance of the evidence" burden of proof when determining whether Mutua was entitled to a favorable exercise of discretion, we are not aware of any caselaw, and Mutua did not identify any, to support the proposition that this is the correct burden. Indeed, our precedent establishes that Mutua's burden is to establish that the balance of equities weighed towards a favorable exercise of discretion. Both the IJ and the BIA analyzed whether Mutua satisfied this burden.

Similarly, Mutua's argument that the BIA employed a clear error, rather than a *de novo*, standard of review lacks possible validity because the BIA stated that it had reviewed whether the IJ properly denied his application for adjustment of status *de novo* and then determined that the adverse factors outweighed the positive ones such that Mutua did not merit a favorable exercise of discretion. The BIA properly applied clear error review in discussing the IJ's finding that there was reason to believe Mutua committed the crime. This was a factual finding as the IJ heard conflicting evidence on this issue and ultimately found one side more credible. *See* 8 C.F.R. § 1003.1(d)(3)(i) ("Facts determined by the [IJ], including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the [IJ] are clearly erroneous."). In sum, Mutua's arguments go to the discretionary determination regarding adjustment of status and are not constitutional claims or questions of law. Accordingly, we dismiss Mutua's

petition concerning his challenges to the burden of proof and stand-ard of review issues.

### B. The BIA did not Misinterpret Regulations When it Declined to Take Administrative Notice of The Criminal Trial Transcript

Mutua argues that the BIA misinterpreted its own regula-tions in denying his request to take administrative notice of the transcript of his criminal trial as an "official document." *See* 8 C.F.R. § 1003.1(d)(3)(iv) (2020).[1] He contends that the BIA erred in declining to engage in factfinding as to whether he committed the crime of which he was accused because the BIA was expressly au-thorized to do so. The government responds that the BIA properly declined to take administrative notice of the trial transcript because the transcript did not fall within one of the exceptions permitting the BIA to take administrative notice of facts. *See id.*

The regulation on aliens and nationality provides that, "[e]xcept for taking administrative notice of commonly known facts such as current events or the contents of official documents, the Board will not engage in factfinding in the course of deciding

---

[1] In 2021, the Department of Justice amended 8 C.F.R. § 1003.1. The Court applies the 2020 version of the regulation because that was the law that existed at the time the BIA rendered its decision. *See Scheerer v. U.S. Att'y Gen.*, 513 F.3d 1244, 1252 (11th Cir. 2008) ("[A] statute or regulation has retroactive ef-fect if [it] would impair the rights a party possessed when he acted, increase [his] liability for past conduct, or impose new duties with respect to transac-tions already completed" (citation omitted)).

20-13129                Opinion of the Court                    12

appeals." *Id.* The regulation does not define the term "official document."

Here, we conclude that the BIA properly declined to take administrative notice of Mutua's criminal trial transcript because the transcript contained facts that were reasonably subject to dispute—as evidenced by the jury's inability to return a verdict—and the BIA was prohibited from making a factual finding in the first instance as to whether Mutua committed the crime of which he was accused. *See Zhu v. U.S. Att'y Gen.*, 703 F.3d 1303, 1308 (11th Cir. 2013) ("The regulation [8 C.F.R. § 1003.1(d)(3)] forbids the BIA from independently engaging in fact-finding and requires it to apply a clear error standard to the IJ's findings"). Accordingly, we deny his petition as to this issue.[2]

### C. The BIA did not Abuse its Discretion When it Declined to Refer Mutua's Appeal to a Three-Member Panel

Mutua argues that the BIA was required to refer his appeal to a three-member panel because his case involved a complex, novel, or unusual issue of law. Questions of law are reviewed *de novo*, with appropriate deference to the BIA's reasonable interpretation of the INA. *Assa'ad v. U.S. Att'y Gen.*, 332 F.3d 1321, 1326

---

[2] The BIA declined to remand Mutua's adjustment of status proceedings to the IJ for consideration of the criminal trial transcript. As Mutua did not raise this issue in his opening brief, he waived it. *See Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1306 (11th Cir. 2012).

(11th Cir. 2003).  Under the regulations, a case "may" be assigned for review by a three-member panel but only under certain, limited circumstances.  8 C.F.R. § 1003.1(e)(6).  Those circumstances include, among other things, the need to "resolve a complex, novel, unusual, or recurring issue of law or fact."  *Id.* § 1003.1(e)(6)(vii).  But even under those circumstances, the decision to refer a case to a three-member panel is discretionary.  *Id.* § 1003.1(e)(6).

Regardless of whether there was a need to resolve a complex, novel, or unusual issue of law, the BIA was not required to refer Mutua's appeal to a three-member panel.  Here, the BIA did not abuse its discretion in declining to do so.  We deny Mutua's petition as to this issue as well.

**PETITION DISMISSED IN PART AND DENIED IN PART.**