[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-14297

Non-Argument Calendar

_____

DERONG WANG,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A205-038-417

_____

Before BRANCH, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Derong Wang, a native and citizen of China, seeks review of the final order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of his application for cancellation of removal under the Immigration and Nationality Act ("INA"). Wang argues that the IJ did not sufficiently consider the evidence he submitted to show that his children would suffer exceptional and extremely unusual hardship ("EEUH"), that the IJ erred by finding he had a possible alternative means of obtaining status in the United States, and that the BIA failed to give reasoned consideration to his claim of hardship. Because we lack jurisdiction over some of Wang's arguments and the rest lack merit, we dismiss Wang's petition for review in part and deny it in part.

## I.    Background

Wang entered the United States without inspection on September 15, 1999. In 2012, the Department of Homeland Security ("DHS") served Wang with a notice to appear, charging him as removable under 8 U.S.C. § 1182(a)(6)(A)(i), "as an alien present in the United States without being admitted or paroled." Wang conceded the charge of removability and applied for cancellation of removal under 8 U.S.C. § 1229b(b)(1), claiming that his removal would result in EEUH to his children, who are United States citizens.

At a hearing on Wang's application for cancellation of removal, Wang testified that he moved to New York after entering the United States in 1999. He lived in New York until 2015, when he moved to Georgia for his then-girlfriend Xia You. The two had met in 2007, and Wang explained that Xia moved to New York for a brief period in 2008 but moved back to Georgia later that year. From 2008 to 2015, Wang lived in New York while Xia lived in Georgia, although they would reunite for visits. During that time, Xia worked part-time at a Chinese restaurant. Xia purchased the restaurant in 2012. After Wang moved to Georgia, he married Xia three years later. Wang testified that he has one biological daughter, who was born in May 2008, and one adopted daughter, who was born in January 2005.[1] Both of Wang's daughters were born in New York, and they are both United States citizens.

Now, Wang and Xia operate the restaurant together and are the restaurant's only employees. Wang works as the cook and is "mainly responsible for the kitchen in the back," and Xia receives phone calls in the front and takes care of the children. Their combined monthly income is about $2,500, and their monthly household expenses are around $2,400 to $2,600. At the time of the

---

[1] Xia is the mother of both of Wang's daughters. Wang's adopted daughter was born to Xia in 2005 while Xia was in a prior relationship. When Wang and Xia lived apart from 2008 to 2015, the children lived in Georgia with Xia. Xia cared for the children and worked part-time, and Wang's primary role was to make money to support the family.

hearing, Xia had A-5 status and was applying for permanent residence in the United States, but the application process was very slow.[2]  Xia's parents and three siblings all live in the United States, and they all have green cards except for her sister.

Wang testified that if he were forced to return to China, the restaurant would close and Xia, whose English is limited, would have to find other restaurant work.  And as the children's caretaker, Xia could work only part-time, which would not be enough "to support the children and the house payment."  As for Wang, he would make only $200 to $300 per month in China with his limited education and skills, which would not be enough to support the children.  Wang explained that the children primarily speak English with minimal Mandarin, that China would bar the children from attending public school because they were United States citizens, and that the family could not afford private school.  The family would also have to pay for private medical care for the children if they went to China with Wang.  Wang testified that Xia's parents were granted political asylum in the United States, which might impact the family if they return to China.

Xia testified next and gave testimony consistent with Wang's.  She added that she could not run the restaurant by herself because she helped in the front of the restaurant and was not able to run the kitchen.  She could not afford to hire an employee to

---

[2] Xia's A-5 status refers to her status as an asylee: Xia's father was granted asylum, and Xia was granted derivative asylee status through her father.

help.  She testified that she did "not have sufficient education and skill" to find another job and explained that if she had to work full time, she would not be able to take care of their children.  She did not know when she would be eligible for permanent residence, but she had to reapply for her A-5 card each year.

The IJ asked counsel when Xia's visa would be current so she could be eligible to become a permanent resident.  DHS informed the IJ that Xia had filed an I-485 application for adjustment of status, which was denied in 2005, and filed another I-485 in 2007, but it was unknown whether that second application had been adjudicated.

The IJ issued an oral decision denying Wang's application for cancellation of removal.  Although the IJ found that Wang and Xia were "credible witnesses" and that Wang met three of the four requirements for cancellation, the IJ ultimately found that Wang failed to meet "his burden to show [EEUH] to his two qualifying relative children for two primary reasons."  First, the IJ found that neither Wang nor Xia had provided "sufficient evidence to show that [Xia] is ineligible to adjust her status, whereby [Wang] would be also eligible to adjust his status by an alternative means."  The IJ explained that "the BIA has long-found that if a Respondent has an alternative means of adjusting his status in the United States, it diminishes any hardship to his qualifying relatives."  Consequently, because Wang failed to provide concrete evidence that Xia "would be ineligible to adjust her status . . . , Wang ha[d] thus failed to show

6                    Opinion of the Court                    21-14297

that the hardship to his qualifying relatives would rise to the level of exceptional and extremely unusual."

Second, the IJ found that, even if Xia were not eligible to adjust her status to become a permanent resident, Wang still failed to meet his burden of showing EEUH to his children. Specifically, the IJ found that if Wang's children remained in the United States after Wang's departure, they would "suffer the same hardship commonly seen in these types of cases," rather than EEUH. The IJ noted that Xia had owned and operated the restaurant for several years while Wang lived out of state, and despite the testimony that they could not afford to hire an employee, there was no testimony indicating that family members would not be able to help Xia run the restaurant in Wang's absence and no evidence "to verify that the restaurant [would] be inoperable" without Wang. But even if the restaurant closed, the IJ found that Xia had transferable skills, no physical or mental impediments to working full-time, and family in the United States who had helped her in the past with the restaurant and her children. Moreover, the IJ stated that the evidence showed that education and healthcare for the children would only be more expensive in China—not unavailable—and that Wang and Xia's testimony about diminished economic prospects did not rise to the level of EEUH.

Wang appealed to the BIA, challenging the determination that he failed to demonstrate EEUH and that Xia's A-5 status constituted an available alternative means of adjusting his status that diminished Wang's hardship claim. Wang argued that he

demonstrated EEUH through testimony that, if he were removed and his family stayed in the United States, Xia would have to close the restaurant because she could not operate it alone; that Xia would not be able to find suitable employment to provide for two children and pay for the family's living and home expenses; and that Wang's two teenage daughters were emotionally dependent on him and would suffer emotional hardship if he left the United States. Wang also argued that, if the whole family returned to China, they would have to pay for private medical care and private school for the children, which they could not afford, and that the children were familiar only with the United States. Additionally, Wang argued that the IJ erred in finding that Xia's status constituted an available alternative means for Wang to adjust his status, which diminished his hardship claim, because even if Xia adjusted her status to become a permanent resident, it would not improve Wang's ability to obtain legal status.

The BIA affirmed the IJ's decision and dismissed Wang's appeal. The BIA acknowledged Wang's arguments that the IJ erred by finding (1) that Wang had not established the requisite EEUH based on financial difficulty (including not being able to operate their restaurant), emotional hardship, and hardship to the children if they went to China and (2) that Xia's status created an alternative means of immigration and diminished Wang's hardship claim. As to the latter argument, the BIA explained that the IJ did not find that Xia's status would directly result in immigration benefits for Wang, but instead merely "noted the possibility that" Xia could

become a permanent resident and file a visa petition on Wang's behalf, which would provide Wang an "alternative means of obtaining" legal status. The BIA then noted that the IJ had alternatively found that, even if Wang could not obtain status through his wife, he had not established EEUH to his children.

The BIA concluded that, "[u]pon *de novo* review, [Wang did] not qualify for cancellation of removal because he did not show that his removal would result in [EEUH] to his [children]." The BIA recognized that Wang's family would experience hardship if Wang were removed but concluded that the hardship did not rise to the level of EEUH. The BIA ruled that the IJ properly considered the evidence of hardship, including the children's health, ages, and lack of special educational needs; economic and financial issues; and family separation. "In this case, when all factors are considered in the aggregate," the BIA explained, "[Wang] did not establish the requisite hardship." Accordingly, the BIA upheld the IJ's decision and dismissed Wang's appeal.

Wang timely appealed.

## II.    Standard of Review and Applicable Law

The INA provides that the Attorney General may cancel the removal of an alien who meets the four statutory requirements enumerated in 8 U.S.C. § 1229b(b)(1).[3]    The last of the four

---

[3] In full, 8 U.S.C. § 1229b(b)(1) provides:

criteria—and the one at issue in this case—requires an alien to establish "that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1)(D).

When the BIA issues a decision regarding the cancellation of removal, "we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision." *Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1308 (11th Cir. 2013); *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016) (explaining that "[w]here the BIA agrees with the IJ's reasoning, we review the decisions of

---

The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien—

>   (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;

>   (B) has been a person of good moral character during such period;

>   (C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and

>   (D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

both the BIA and the IJ to the extent of the agreement" and where "the BIA [does] not expressly adopt the IJ's decision or rely on its reasoning, we . . . review only the BIA decision"). We do not consider issues or findings from the IJ that were not reached by the BIA. *See Gonzalez*, 820 F.3d at 403. Moreover, we review jurisdictional questions, constitutional claims, and questions and conclusions of law *de novo*, and we review factual determinations under the substantial evidence test. *Id*.; *Rivas v. U.S. Att'y Gen.*, 765 F.3d 1324, 1328 (11th Cir. 2014).

Under the INA's discretionary decision bar, we lack jurisdiction to review "any judgment regarding the granting of" cancellation of removal, except to the extent that a petitioner raises a constitutional claim or question of law. 8 U.S.C. § 1252(a)(2)(B)(i), (D); *see Patel v. Garland*, 142 S. Ct. 1614, 1627 (2022) (holding that "[f]ederal courts lack jurisdiction to review facts found as part of discretionary-relief proceedings under . . . the . . . provisions enumerated in § 1252(a)(2)(B)(i)," one of which is cancellation of removal). "[A] party may not dress up a claim with legal or constitutional clothing to invoke our jurisdiction." *Mutua v. U.S. Att'y Gen.*, 22 F.4th 963, 968 (11th Cir. 2022) (quotation omitted). Thus, "[a]n argument couched as a legal question that essentially challenges the agency's weighing of evidence is a garden-variety abuse of discretion argument that does not state a legal or constitutional claim." *Id.* (quotation omitted).

Nevertheless, we have jurisdiction to determine whether the BIA gave reasoned consideration to an alien's claim because

that raises a question of law. *Perez-Guerrero v. U.S. Att'y Gen.*, 717 F.3d 1224, 1231 (11th Cir. 2013); *Farah v. U.S. Att'y Gen.*, 12 F.4th 1312, 1327 (11th Cir. 2021). "A reasoned-consideration examination does not look to whether the agency's decision is supported by substantial evidence." *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 803 (11th Cir. 2016). "Rather, it looks to see whether the agency has 'consider[ed] the issues raised and announce[ed] its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted.'" *Id.* (quoting *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011)). The BIA must consider, but need not discuss, all the evidence submitted to it. *Ali v. U.S. Att'y Gen.*, 931 F.3d 1327, 1333–34 (11th Cir. 2019).

## III.    Discussion

On appeal, Wang argues that (1) the IJ failed to correctly analyze the cumulative effect of the hardship factors on Wang's children; (2) the IJ erred by finding that Wang had an alternative means of adjusting his status in the United States; and (3) the BIA failed to provide reasoned consideration of Wang's claim. We deny Wang's petition because we either lack jurisdiction to consider his arguments or because his enumeration of error lacks merit.

*First*, Wang argues that the IJ did not provide an "adequate analysis of the cumulative effect of [the hardship] factors on [his] daughters." But because the BIA issued a decision regarding the cancellation of removal in this case, "we review only [the BIA's] decision, except to the extent that the BIA expressly adopts the IJ's

decision." *Rodriguez*, 735 F.3d at 1308. Here, the BIA engaged in a *de novo* review of whether Wang met the EEUH requirement and did not expressly adopt the IJ's analysis. Accordingly, Wang's argument that the IJ did not properly analyze the hardship factors is not properly before us.[4] *See Gonzalez*, 820 F.3d at 403; *Malu v. U.S. Att'y Gen.*, 764 F.3d 1282, 1289 (11th Cir. 2014).

*Second*, Wang's argument that the IJ erred by finding that Wang's hardship claim was diminished because he had a possible alternative means to obtaining status in the United States fails for the same reason. Wang again challenges the decision of the IJ—not the BIA. Because the BIA never expressly adopted or relied on the IJ's alternative-means finding, that finding is not properly before us for review.[5] *See Gonzalez*, 820 F.3d at 403 (reviewing

[4] Additionally, to the extent Wang argues that the IJ applied the wrong legal standard, we lack jurisdiction to consider his claim because he failed to raise it before the BIA. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006) (explaining that, "absent a cognizable excuse or exception, we lack jurisdiction to consider claims that have not been raised before the BIA" (quotation omitted)). And to the extent Wang challenges the IJ's or the BIA's weighing of the hardship factors, we lack jurisdiction over such claims. *Martinez v. U.S. Att'y Gen.*, 446 F.3d 1219, 1222 (11th Cir. 2006) (explaining that we lack jurisdiction to review the BIA's EEUH determinations); *Flores-Alonso v. U.S. Att'y Gen.*, 36 F.4th 1095, 1099–100 (11th Cir. 2022).

[5] As a reminder, although the BIA summarized the IJ's findings—including the IJ's *alternative* finding that Xia may provide Wang with an alternative pathway to status—the BIA conducted a *de novo* review and concluded that Wang failed to demonstrate EEUH without relying on any alternative-means finding.

"only the BIA decision" where the "BIA did not expressly adopt the IJ's decision or rely on its reasoning").

*Third*, Wang's argument that the BIA failed to provide reasoned consideration of his claim lacks merit. Unlike his other two enumerations of error, Wang's third argument is properly before us because he contends that the BIA did not reasonably consider his claim—which is a question of law that we can review. 8 U.S.C. § 1252(a)(2)(D); *Perez-Guerrero*, 717 F.3d at 1231. We have explained that "the [BIA] does not need to do much" to reasonably consider a petitioner's claim. *Ali*, 931 F.3d at 1333. "We just need to be left with the conviction that the [BIA] has heard and thought about the case and not merely reacted." *Id.* (quotation omitted) (alterations adopted); *Farah*, 12 F.4th at 1327 ("To determine whether the [BIA] gave reasoned consideration to a petition, we inquire only whether the [BIA] considered the issues raised and announced its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." (quotation omitted)). We have held that the BIA's analysis was sufficient to show reasoned consideration when it listed the basic facts of the case, referred to relevant statutory and regulatory authority, and accepted several grounds on which the IJ denied the petitioner's request for relief. *Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 874–75 (11th Cir. 2018). On the other hand, the BIA fails to give reasoned consideration to a claim when it "misstates the contents of the record, fails to adequately explain its rejection of logical conclusions, or provides justifications for its

decision which are unreasonable and which do not respond to any arguments in the record." *Id.* at 874 (quotation omitted).

Here, Wang argues that the BIA did not reasonably consider his claim because "the BIA's conclusion as to whether [Wang's children] would suffer the requisite hardship consisted of two short and conclusory paragraphs." We disagree and conclude that the BIA's discussion was sufficient to show that the BIA heard and thought about Wang's arguments and the evidence in his case. The BIA acknowledged Wang's arguments about various hardship factors, explicitly noting his arguments about being unable to operate the restaurant, financial difficulties, and the emotional hardship that the children would suffer if they accompanied Wang to China. It then cited the applicable statutory and regulatory authority and relevant BIA decisions and concluded that Wang's asserted hardship factors, when considered in the aggregate, did not meet the EEUH standard. In other words, the BIA's discussion showed that the BIA gave reasoned consideration to Wang's claim. *See Bing Quan Lin*, 881 F.3d at 874–75.

## IV.    Conclusion

For the foregoing reasons, we dismiss in part Wang's petition because Wang's first two arguments are not properly before us, and we deny in part Wang's petition because the BIA gave reasoned consideration to Wang's claim.

**PETITION DISMISSED IN PART AND DENIED IN PART.**